James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jason L. Solotaroff
Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
11 Broadway - Suite 2150
New York, New York 10004
(212) 847-8315

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL MARGULIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE HERTZ CORPORATION, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT AND DEMAND** <br> **FOR TRIAL BY JURY** |

Plaintiff Daniel Margulis, individually and on behalf of all others similarly situated, hereby brings this Complaint and states as follows:

**Introduction**

1. This case arises from Defendant The Hertz Corporation's ("Hertz") practice of charging a concealed currency conversion fee to its customers who rent vehicles abroad. Hertz quotes these customers rates for vehicle rentals that do not include the fee, charges the fee directly to the customer's credit card, and then falsely claims that the customer specifically chose to be overcharged in this manner.

2. Plaintiff Daniel Margulis was charged this fee on two foreign vehicle rentals from Hertz in 2013. He brings this action, alleging breach of contract, unjust enrichment, fraud and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-159, on behalf of himself and a class of persons who rented vehicles from Hertz and were charged a currency conversion fee by Hertz.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) insofar as the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of states different from Hertz.

4. This Court has personal jurisdiction over Hertz because Hertz does systematic and continuous business and has its principle place of business in this Judicial District.

5. Venue is proper in this District pursuant to 28 U.S.C 1391 because Hertz is a resident of this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

6. Daniel Margulis is a citizen of the State of New Jersey.

7. The Hertz Corporation is a Delaware corporation with its principal place of business in Park Ridge, New Jersey.

## FACTUAL BACKGROUND

8. When a consumer engages in a credit card transaction in a foreign country, the credit card issuer automatically converts the charge to the cardholder's currency. The rate being used for the conversion is stated on the cardholder statement, as are any supplementary fees. The currency conversion fees charged by credit card issuers range up to three percent though some

issuers offer cards with no such fee. Many credit card users apply for and use these "no foreign transaction fee" cards specifically to avoid these fees.

9. Some merchants, however, now employ a predatory practice known as "dynamic currency conversion." In this scheme, when a customer pays for a transaction with a foreign credit card, the merchant offers the customer the option of having the credit card billed in local currency, or in U.S. dollars. The merchant generally does not disclose that if the client chooses US dollars, the conversion will be carried out at a far higher rate than any credit card company would charge.

10. These "dynamic currency conversions" are widely recognized to be deceptive and harmful to consumers. As a headline in the Hartford Courant put it: "Dynamic Currency Conversion: Still a Scam." Articles to similar effect have appeared in many publications worldwide, including the Washington Post and the Guardian (UK).

11. In spite of the widespread perception that these "dynamic currency conversions" are unethical in the absence of full disclosure, some reputable companies offer them. For example, the U.K.-based Waitrose, and the Italy-based Co-op, both large supermarket chains, both have such systems. When a customer checks out using a credit card that the system recognizes as being from a foreign country, the cashier is prompted to ask which currency to use in billing the credit card. The cashier is not prompted to disclose that any clients choosing their own currency pay far more than if they requested their card to be billed in the local currency.

12. Most merchants, at least, give the customer the choice, albeit with inadequate disclosure.

13. Defendant Hertz, however, unilaterally converts transactions into a cardholder's own currency, charging a 4.5 percent fee for a service that many credit card issuers offer for free.

Even if the credit card does charge a fee, the Hertz 4.5 percent fee is at least fifty percent higher, and usually more, than the fee charged by the credit card issuers.

14. Moreover, Hertz makes a number of misrepresentations about the unauthorized conversion that include the following: A) that the customer has been offered a choice of currencies and has affirmatively opted for the conversion; B) that the customer had the option of declining the conversion; C) that the dollar equivalents to the foreign currency prices it quotes online are correct; and D) implying that its method is cheaper than a conversion by credit card, knowing full well that it is far more costly than even the most expensive credit card conversion.

## PLAINTIFF'S CLAIMS

15. On January 29, 2013, Plaintiff reserved and paid in advance for a Hertz vehicle rental in Italy through AutoEurope, a Hertz licensee located in Portland, Maine.

16. The quoted price for the rental was USD 611.52. Upon payment of that amount, Plaintiff received an executed contract permitting him to pick up the vehicle in Italy.

17. EUR is the local currency in Italy. The AutoEurope contract stated that although the base rental was paid in advance, Plaintiff would nevertheless be responsible for an additional "Vehicle License fee of approximately EUR 2.20 per day, maximum of approximately EUR 33." The contract further stated in its Terms and Conditions section that, "All car rates are guaranteed in US Dollars, *all local fees are billed in local currency* [emphasis added]".

18. Plaintiff picked up the vehicle in Venice, Italy on April 6, 2013, and returned it to the Hertz facility at the Rome, Italy airport on April 24.

19. Pursuant to the contract, the Hertz invoice showed an amount corresponding to the Vehicle License Fee of EUR 32.67, but without Plaintiff's consent, Hertz converted this amount to USD 44.31 and billed this figure to his credit card.

4

20. Plaintiff was presented with two different copies of the bill, both in the Italian language. Both versions stated, in sum and substance, that Plaintiff had been offered a choice, and had chosen to have Hertz convert the amount owed to U.S currency.

21. These statements were false. Plaintiff had made no such choice. The rate of conversion was approximately 4.5% higher than the prevailing market rate that his own credit card would have charged him, without any additional fee.

22. Plaintiff protested at the Hertz facility about the conversion and requested that the transaction be reversed and rebilled in Euros. Plaintiff was told that this could not be done because Hertz policy is that U.S. cards must be charged in USD. When Plaintiff asked that Hertz explain how he had been given a choice of currencies, Plaintiff was told by Hertz that use of a U.S. credit card represented his choice and that it authorized Hertz to bill in dollars.

23. On June 8, 2013, Plaintiff reserved a Hertz rental vehicle for a trip in Wales through hertz.com.

24. The price quoted was GBP 265.16. Upon agreeing to this price, Plaintiff received a contract permitting him to pick the car up in Wales. The contract specified, "Included: Taxes, Airport Fee, Vehicle Licensing Fee and Road Tax." It stated that the total price for extras was GBP 0.00 and that the price of GBP 265.16 was guaranteed.

25. There was no mention of USD or of conversion options anywhere in the contract or other materials Plaintiff received.

26. Plaintiff picked up the vehicle in Holyhead, Wales on October 11, 2013.

27. When Plaintiff returned the car, he was presented with a bill for GBP 322.95. The bill was higher than price quoted because of some overcharges that are not relevant to this action.

5

Without authority, Hertz converted this amount to USD 542.93 and billed this figure to Plaintiff's credit card.

28. The bill showed that the exchange rate being used for the unauthorized conversion was GBP/USD=1.6812, approximately 4.5% higher than the prevailing market rate.

29. Beneath the exchange rate came the following statement: "Exchange Rate Source Reuters. I have been offered a choice of currency and chosen to pay my rental charges in the currency of my card."

30. These statements were both false. Plaintiff had never been offered nor made any such choice.

31. Plaintiff spoke to the agent on duty and protested, among other things, the unauthorized currency conversion. The agent stated that it was impossible for her to make any change to the bill.

32. Plaintiff subsequently protested the unauthorized currency conversion to Hertz UK Customer Service. The representative stated that Hertz policy is that the use of a U.S. credit card constitutes a request for Hertz to convert to dollars and refused to reverse the charges.

## CLASS CLAIMS

33. In addition to deceiving and defrauding Plaintiff and breaching an agreement with him to provide him rental vehicles at the prices quoted, Hertz has also engaged in the same conduct with respect to many other customers.

34. Plaintiff brings this action on behalf of himself, and all others similarly situated, pursuant to Fed.R.Civ.P. 23(a), 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

> All persons who rented vehicles from Hertz in a foreign country and had some or all of the charges converted to U.S. Currency by Hertz after February 12, 2008.

6

35. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the commerce involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is in the sole possession, custody and control of Hertz, Plaintiff believes that there are tens of thousands of members of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among questions of law and fact common to the Class are:

    a. whether Hertz converted rental vehicle charges using an inflated currency conversion rate;

    b. whether Hertz made adequate disclosure of its currency conversion practices;

    c. whether the Class authorized the conversions;

    d. whether the conversions constituted a deceptive practice within the meaning of the New Jersey Consumer Fraud Act;

    e. whether Hertz's quotation of a particular rate for a rental vehicle and the Class members acceptance of that rate constituted enforceable contracts;

    f. whether Hertz breached those contracts by charging an increased rate based on its inflated currency conversion charges;

    g. whether Hertz defrauded the Class by charging an inflated currency conversion rate and representing that the Class had consented to or had opted for Hertz to convert charges into United States currency;

    h. whether the Class has suffered damages as a result of Hertz's actions, and if so, the measure and amount of such damages; and

    i. whether injunctive and/or declaratory relief is appropriate.

37. Plaintiff's claims are typical of the claims of the other members of the Class he seeks to represent. Hertz's practices have targeted and affected all members of the Class in a

similar manner, *i.e.*, they have all sustained damages arising out of Hertz's unauthorized and deceitful conversion of foreign rental vehicle charges into U.S. currency at inflated rates.

38. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in both complex class action and consumer fraud litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

40. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual Class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for class members to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## COUNT I
### (Breach of Contract)

41. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint as if fully set forth herein.

42. Plaintiff and the Class entered into contracts with Hertz by accepting Hertz's offers of rental vehicles in foreign countries at specified prices.

43. Hertz breached these contracts by charging more than the agreed price as a result of charging Plaintiff and the Class an unauthorized and inflated currency conversion fee.

44. Plaintiff and the Class have suffered damages as a result of Hertz's breach of contract.

## COUNT II
### (Violation of New Jersey Consumer Fraud Act)

45. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint as if fully set forth herein.

46. Plaintiff and the Class are consumers within the meaning of the New Jersey Consumer Fraud Act ("CFA").

47. Hertz has engaged in deceptive, unconscionable and/or fraudulent practices within the meaning of the CFA including: A) representing to Plaintiff and the Class that the rental vehicle prices quoted to Plaintiff and the Class were the actual prices Hertz would charge even though the price would actually be higher as a result of Hertz's inflated currency conversion charge; B) representing to Plaintiff and the Class that the dollar equivalent of the prices listed were lower than Hertz would actually charge given Hertz's unauthorized currency conversion fee; C) representing to Plaintiff and the Class that Hertz's customers who rented vehicles in other countries would be given a choice as to whether they wished to have Hertz convert the amount

owed to U.S. currency; D) representing to Plaintiff and the Class that they had agreed to have Hertz convert the amounts owed on vehicle rentals in other countries to U.S. currency; and E) failing to disclose Hertz's inflated currency conversion fee to Plaintiff and the Class.

48. Hertz intended that Plaintiff and the Class would rely on the misrepresentations and failures to disclose so that Plaintiff and the Class would rent vehicles from Hertz.

49. The foregoing acts, misrepresentations and failures to disclose caused ascertainable damage to Plaintiff and the Class, namely the overcharges they paid as a result of Hertz's deceptive, undisclosed and inflated currency conversion fee.

50. At all relevant times, Hertz conducted trade and commerce in New Jersey within the meaning of the CFA.

51. Hertz's executive offices are located in Park Ridge, New Jersey and on information and belief, Hertz's deceptive scheme was designed and implemented in New Jersey.

## COUNT III
### (Unjust Enrichment)

52. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint as if fully set forth herein.

53. In the alternative, Hertz has been unjustly enriched by its assessment of its deceptive, undisclosed and inflated currency conversion charge.

54. Plaintiff and the Class conferred a benefit on Hertz by paying Hertz's inflated currency conversion charge.

55. The circumstances are such that it would be unjust and inequitable for Hertz to retain the benefit that it unjustly received from Plaintiff and the Class.

56. Plaintiff and the Class are entitled to recover or recoup damages from Hertz as a result of the unjust enrichment.

## COUNT IV
### (Fraud)

57. Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint as if fully set forth herein.

58. Hertz has defrauded Plaintiff and the Class by making material misrepresentations and failures to disclose that including: A) representing to Plaintiff and the Class that the rental vehicle prices quoted to Plaintiff and the Class were the actual prices Hertz would charge even though the price would actually be higher as a result of Hertz's inflated currency conversion charge; B) representing to Plaintiff and the Class that the dollar equivalent of the prices listed were lower than Hertz would actually charge given Hertz's unauthorized currency conversion fee; D) representing to Plaintiff and the Class that they had agreed to have Hertz convert the amounts owed on vehicle rentals in other countries to U.S. currency; and E) failing to disclose Hertz's inflated currency conversion fee to Plaintiff and the Class.

59. Plaintiff and the Class relied on these representations and omissions in renting vehicles from Hertz.

60. Plaintiff and the Class suffered damages as a result of Hertz's fraudulent conduct and should recover these damages, as well as punitive damages, from Hertz.

WHEREFORE, Plaintiff demands judgment be entered against Defendants as follows:

1. An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

2. A declaration that Hertz has breached its contracts with Plaintiff and the Class, violated the New Jersey Consumer Fraud Act, been unjustly enriched at the expense of Plaintiff and the Class and committed fraud in their dealings with Plaintiff and the Class;

3. Awarding compensatory and statutory damages to Plaintiff and the Class;

4. Enjoining Hertz from continuing to violate the New Jersey Consumer Fraud Act;

5. Awarding reasonable attorney's fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

          CARELLA, BYRNE, CECCHI,
          OLSTEIN, BRODY & AGNELLO, P.C.
          Attorneys for Plaintiff


          By: /s/ James E. Cecchi
              JAMES E. CECCHI

Dated: February 25, 2014

Jason L. Solotaroff
Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
11 Broadway - Suite 2150
New York, New York 10004
(212) 847-8315

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

                                                    CARELLA, BYRNE, CECCHI,
                                                    OLSTEIN, BRODY & AGNELLO, P.C.
                                                    Attorneys for Plaintiff

                                          By:   /s/ James E. Cecchi
                                                       JAMES E. CECCHI

Dated: February 25, 2014

Jason L. Solotaroff
Oren S. Giskan
GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
11 Broadway - Suite 2150
New York, New York 10004
(212) 847-8315

13