<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIEL MARGULIS, individually and on behalf of all others similar situated,** <br><br> *Plaintiff*, <br><br> v. <br><br> **THE HERTZ CORPORATION,** <br><br> *Defendant.* | Civil Action No. 14-1209 <br><br> **OPINION** |

ARLEO, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on Defendant The Hertz Corporation's ("Hertz") Motion for Judgment on the Pleadings for Failure to Join Indispensable Parties [Dkt. No. 20]. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the motion is **DENIED**.

**I.    FACTS**

Plaintiff Daniel Margulis ("Plaintiff") alleges that Hertz is conducting a broad-ranging currency conversion scheme to defraud its customers. Hertz allegedly quotes customer rates for its vehicle rentals without including any currency conversion fee, charges the fee directly to the customer's credit card, and then falsely claims the customer specifically chose the currency conversion and subsequent overcharge. Dkt. No. 1, Compl. ¶ 1.

Hertz forces customers to use Hertz for currency conversion and charges 4.5% for the service. Id. ¶ 13. Some credit cards, by contrast, provide free currency conversion, and most charge less than half what Hertz charges for the service. Id. Hertz also misrepresents its actual practices, falsely stating in its contracts: (1) that the customer opted for conversion after being

1

offered a choice regarding which currency to bill; (2) that the customer had the option to decline conversion; (3) that the dollar equivalents to the foreign currency prices it quotes online are correct; and, by implication, (4) that its method is cheaper than credit card currency conversions, while knowing that to be false even for the most expensive credit card conversion fees. Id. ¶ 14.

Plaintiff claims he was charged this fee on two foreign vehicle rentals from Hertz in 2013. Id. ¶ 2. He reserved and paid in advance for an Italian Hertz vehicle rental through AutoEurope, a Hertz licensee located in Portland, Maine. Id. ¶ 15. He paid the quoted price of USD 611.52 and received an executed contract permitting him to pick up the vehicle in Italy. Id. ¶ 16. The contract stated that Plaintiff would be responsible for an additional Vehicle License fee of approximately EUR 2.20 per day, not to exceed EUR 33 total. Id. ¶ 17. The contract also stated that "[a]ll car rates are guaranteed in US Dollars, all local fees are billed in local currency." Id. After Plaintiff returned the car in Italy, Hertz converted the billable amount to USD 44.31 without Plaintiff's consent and billed his credit card. Id. ¶ 19. Plaintiff's bill falsely stated that Plaintiff had been offered a choice and had chosen to have Hertz convert the amount owed to U.S. currency. Id. ¶¶ 20, 21. Plaintiff immediately protested the charge and asked to reverse it, but a Hertz representative said that use of a U.S. credit card represented an irreversible choice to bill in USD. Id. ¶ 22.

Later, Plaintiff reserved a Hertz vehicle rental for a trip in Wales through hertz.com. Id. ¶ 23. Plaintiff agreed to the quoted price and received a contract permitting him to pick up the car in Wales. Id. ¶ 24. The contract specified that "Taxes, Airport Fee, Vehicle Licensing Fee and Road Tax" were included and stated that the price of GBP 265.16 was guaranteed. Id. This contract did not mention USD or conversion. Id. ¶ 25. After Plaintiff returned the car in Wales, Hertz converted the billable amount to USD and billed the converted sum to Plaintiff's credit card,

using an exchange rate that was 4.5% higher than the prevailing market rate. Id. ¶¶ 27, 28. The final documents falsely stated "Exchange Rate Source Reuters. I have been offered a choice of currency and chosen to pay my rental charges in the currency of my card." Id. ¶¶ 29, 30. Plaintiff again protested the currency conversion, and the agent on duty stated it was impossible for her to make any changes to the bill. Id. ¶ 31. Plaintiff then protested the currency conversion to Hertz U.K. Customer Service, where a representative said that it is Hertz's policy that use of a U.S. credit card constitutes a request for Hertz to convert to dollars and refused to reverse the charges. Id. ¶ 32. Plaintiff alleges that Hertz engaged in this same deceptive conduct with many other customers. Id. ¶ 33.

Plaintiff alleges breach of contract, unjust enrichment, fraud, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-159, et seq. Plaintiff seeks to bring this matter on behalf of himself and a class of others who rented vehicles from Hertz and were charged a currency conversion fee.

Hertz U.K. Ltd. and Hertz Italiana S.r.l. (the "Hertz subsidiaries") are the subject of the instant motion. Hertz argues that the Hertz subsidiaries are necessary parties because of their involvement as signatories to rental contracts printed at the rental counter. Hertz further argues that the Court does not have personal jurisdiction over its subsidiaries, and so must dismiss the case under Federal Rules of Civil Procedure 12(b)(7), 12(c), and 19.

## II. STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(c), 12(h)(2)(B), and 12(b)(7) allow a party to move for judgment on the pleadings to dismiss a case for failure to join necessary and indispensable parties. When deciding a 12(b)(7) motion, the Court accepts all factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. Jurimex Kommerz

Transit G.M.B.H. v. Case Corp., 65 F. App'x 803, 805 (3d Cir. 2003); Tullett Prebon, PLC v. BGC Partners, Inc., No. 09-5365, 2010 WL 2545178, at *6 (D.N.J. June 18, 2010) aff'd, 427 F. App'x 236 (3d Cir. 2011).  The burden lies with the moving party to show why an absent party should be joined, or alternatively, why the case must be dismissed in that party's absence.  See Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 635 F.3d 87, 97 (3d Cir. 2011); Estate of Hernandez v. Kretz, No. 12-3152, 2014 WL 4829080, at *2 (D.N.J. Sept. 29, 2014).

> To dismiss a case for failure to join an indispensable party the Court must determine:
>
> (1) whether it is necessary that the absent party be joined; (2) whether it is possible for the absent necessary party to be joined; and (3) if joinder of the absent party is not feasible, whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

Del. Riverkeeper Network v. Del. River Basin Comm'n, No. 10-5639, 2011 WL 3882503, at *3 (D.N.J. Sept. 2, 2011) (citation and quotation marks omitted); see also Fed. R. Civ. P. 19.  If the Court finds that a party is necessary, cannot be joined, and is indispensable, the Court must dismiss the case.  Tullett Prebon, 427 F. App'x. at 239.

### III.   ANALYSIS

Hertz urges the Court to dismiss this action because the Hertz subsidiaries are necessary, unable feasibly to be joined, and are indispensable to the case.  This Court is not persuaded.

#### A. Necessary

First, Hertz fails to prove that the absent subsidiaries are necessary parties.  A party is necessary under Rule 19 if either:

> (A) in the person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

4

Fed. R. Civ. P. 19(a)(1).  Neither of these is met here.

### 1. Complete Relief Between Named Parties

Hertz argues that complete relief cannot be accorded between the named parties in this case because the Hertz subsidiaries are the true contracting parties, and they cannot be enjoined from continuing misconduct without being named as parties.  The Court disagrees.

Though the court may consider indisputably authentic documents on which plaintiff's claims are based, see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997), the court otherwise accepts all factual allegations pled in the Complaint on a 12(b)(7) motion. Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 F. App'x 803, 805 (3d Cir. 2003).

To show that the subsidiaries are the true contracting parties, Hertz provides several documents that it claims are the contracts in dispute.  Dkt. No. 21, Cert. of Kevin Marino, Exs. 3-6.  These "contracts" cannot be considered because they are not documents on which Plaintiff's claims are based.

Plaintiff alleges that he reserved both rentals from "Hertz."  Compl. ¶¶ 42, 48, 59.  He reserved each vehicle online while he was in the United States, one through Hertz licensee AutoEurope and another through Hertz.com.  Id. ¶¶ 15, 23.  After paying or agreeing to payment online, Plaintiff received a contract in each case entitling him to pick up the vehicles.  Id. ¶¶ 16, 24.  No allegations or evidence indicate that the Hertz subsidiaries were even identified until after Plaintiff entered into the contracts with Hertz and sought to pick up the vehicles in the foreign countries.  The documents Hertz now points to in this motion were printed at the rental counter of the foreign Hertz subsidiaries.  Dkt. No. 20, Def.'s Mot. J. Pleadings at 3-4; Dkt. No. 21, Cert. of Kevin Marino, Exs. 3-6.  Facially, then, these documents are not the contracts on which Plaintiff relies; Plaintiff's contracts were received online in the United States while the Hertz documents

5

were printed at the rental counter in Italy and the United Kingdom. The Hertz documents therefore cannot replace the Complaint's factual allegations. Because the Complaint identifies Hertz and Plaintiff as the contracting parties, Hertz can provide complete relief here.

Furthermore, even if Hertz had attached the operative contracts on which Plaintiff relied, Hertz's concern is speculative. Plaintiff does not request an injunction against the Hertz subsidiaries. Instead, he seeks monetary damages from Hertz for its breach, "a declaration that Hertz has breached its contracts," and an injunction preventing "Hertz from continuing to violate the New Jersey Consumer Fraud Act." Compl. at 11 ¶¶ 2-4.

Hertz argues the conduct of its subsidiaries is implicated by the Complaint, but a similar argument was rejected in BFI Waste Systems of North America, Inc. v. Broward County. 209 F.R.D. 509 (S.D. Fla. 2002). In that case, the defendant county argued that the complaint referred to conduct of entities other than the county. The court agreed, but stated that because damages and declaratory and injunctive relief were only sought against the county, the unnamed parties were not necessary to accord complete relief between plaintiff and the county. Id. at 515. Here, there is no dispute that Hertz can pay damages and control its own conduct. That is the only requested relief. Because the conduct at issue is Hertz's and the only requested relief is from Hertz, Hertz has not proven that complete relief cannot be accorded between the named parties.

Additionally, if Hertz and its subsidiaries are found to operate as a single entity, it would demonstrate that Hertz has control over the actions of its subsidiaries. See infra at 8-10. If so, there is no need to join the Hertz subsidiaries because the subsidiaries and Hertz function as a unit.

**2. Parties Claiming An Interest**

Hertz also argues that its subsidiaries are parties "claim[ing] an interest" in the case because they are parties to the contracts at issue.[1] The Court disagrees. As discussed above, Hertz's characterization of its subsidiaries as parties to the contracts at issue contradicts the Complaint.

Even if the subsidiaries were parties to the contracts at issue, they would still not be necessary to this case. "Signatories to a contract are not always considered to be necessary parties." Ass'n Headquarters, Inc. v. Usenix Assoc. & Sys. Adm'rs Guild, No. 06-4405, 2007 WL 1959276, at *3 (D.N.J. July 3, 2007) (argument that court can grant full relief because defendant was true party in interest to the contract was sufficient to "rebut the defendants' rote assertion that ordinarily a signatory to a contract at issue is necessary party to litigation"). More specifically, co-obligors to a contract are not always necessary parties under Rule 19(a). See Dickson v. Murphy, 202 F. App'x 578, 580 (3d Cir. 2006); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 408 (3d Cir. 1993). Thus, to the extent the Hertz subsidiaries are merely contractual co-obligors with Hertz, they are not necessary here.

More fundamentally, Hertz fails to explain why its subsidiaries would actually be hindered by any judgment in this case, simply stating instead that a judgment would determine the wrongfulness of the subsidiaries' actions. That is not enough. The issue is whether "a disposition of this case in their absence could prejudice their rights to defend such claims." Abuhouran v. KaiserKane, Inc., No. 10-6609, 2012 WL 4027416, at *9 (D.N.J. Sept. 12, 2012). Hertz has not made a sufficient showing that the Hertz subsidiaries' right to defend themselves will be

---

[1] Hertz subsidiaries do not themselves claim any interest in this case. Though a party's failure to claim an interest does not automatically preclude that party from being necessary, see N.S.N. Int'l Indus. v. E.I. Pont de Nemours, 143 F.R.D. 30, 34 (S.D.N.Y. 1992), it is a relevant factor indicating non-necessity. See Am. Home Mortgage Corp. v. First Am. Title Ins. Co., No. 07-01257, 2007 WL 3349320, at *6 (D.N.J. Nov. 9, 2007) (court may consider whether the absent party claims the supposed interest).

prejudiced. The "mere possibility that continuation of this federal case could have some effect on later litigation" is insufficient to make a party "necessary." Janney Montgomery Scott, Inc., 11 F.3d at 413; see also Huber v. Tayler, 532 F.3d 237, 250-51 (3d Cir. 2008) (mere possibility of issue preclusion insufficient to render absent parties necessary).

Finally, Hertz argues that it may be subject to multiple or inconsistent obligations if the European Commission responsible for dynamic currency conversion regulation or European courts impose rules which conflict with this Court's ruling. Rule 19(a)(2)(ii), however, only designates an absent party as necessary if there is a "substantial risk" of multiple or inconsistent obligations. Hertz provides no analysis as to whether a judgment in this case would have a preclusive effect on subsequent cases. Hertz also fails to provide any reason to believe that such an outcome is more than pure speculation. These bare arguments are insufficient to show "a substantial risk" of multiple or inconsistent obligations. Hertz has thus failed to prove that the Hertz subsidiaries are necessary parties under Rule 19(a).

### B.  Feasible to Join

Even if the Hertz subsidiaries were necessary, Hertz has also failed to prove that joinder is not feasible. Hertz argues that the Court does not have personal jurisdiction over the Hertz subsidiaries, while Plaintiff replies that the Court does have jurisdiction under a single entity theory.

Defendant bears the burden of proving that joinder of a necessary party is not feasible in order to prevail on a motion to dismiss under 12(b)(7). See 350 W. Ash Urban Home, Inc. v. Everest Indem. Ins. Co., No 13-18, 2014 WL 1653122, at *4 (S.D. Cal. Apr. 24, 2014); Citizens Against Longwall Mining v. Colt LLC, No 05-3279, 2006 WL 1989888, at *8 (C.D. Ill. July 13,

2006).  Under the single entity theory, Hertz subsidiaries are subject to jurisdiction wherever Hertz is if

> the subsidiary and the parent so operate as single entity, or unified and cohesive economic unit, that when the parent is within venue of court, the subsidiary is also within court's jurisdiction; this "single entity" test requires that a parent over which the court has jurisdiction so control and dominate a subsidiary as in effect to disregard the latter's independent corporate existence.

Genesis Bio Pharm., Inc. v. Chiron Corp., 27 F. App'x 94, 98 (3d Cir. 2002) (brackets and ellipses removed).

Facts support both sides.  Plaintiff provides substantial information showing Hertz and the Hertz subsidiaries are not separate.  For one, Hertz consistently holds itself out as a single, global company.  Hertz also appears to claims the assets, employees, and accomplishments of its subsidiaries as its own in its SEC filings.  In addition, Hertz exerts significant influence and control over its subsidiaries on various issues by, for example: (1) requiring that the general managers of the Hertz subsidiaries report to a Hertz executive officer who sets business plans and budgets for Hertz Italiana and Hertz U.K.; (2) sharing an officer who also holds the title of Assistant Secretary at Hertz; (3) exerting total control over the subsidiaries' websites; and (4) providing detailed procedure manuals to control daily operations.

On the other hand, Hertz supplies information that suggests a separate corporate existence, including that Hertz Italiana and Hertz U.K. were separately incorporated; have their own board of directors and management team; separately buy and maintain their own rental car fleets and set rental rates; have separate corporate books, bank accounts, and financial records; file their own taxes; manage their day-to-day operations; and have control over their own employees.  However, contracts critical to determining whether Hertz and its subsidiaries operate as a single entity—

9

namely, agreements which lay out the contractual relationships between Hertz and its subsidiaries (through an intermediate Hertz holding company)—were not provided to this Court.

On this record, and in the absence of the contracts explaining Hertz and its subsidiaries' relationship, the Court cannot determine whether Hertz and its subsidiaries operate separately or as a single entity. See Fogel v. Hertz Int'l, 529 N.Y.S.2d 484, 485 (1st Dep't 1988) ("[T]he agreement between Hertz Italiana and Hertz International . . . . raises questions regarding the degree of control exercised by Hertz International over Hertz Italiana which preclude summary judgment."). Hertz has therefore not met its burden to show that joinder of the Hertz subsidiaries is not feasible.

### C. Indispensable

Even if it were not feasible to join the Hertz subsidiaries, this case would still proceed because the subsidiaries are not indispensable. To determine whether a party is indispensable, the Court weighs four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); see also Tellett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 240 (3d Cir. 2011). The Court ultimately "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Id.

The equities in this case strongly militate against dismissal. Plaintiff alleges that he entered into contracts with Hertz and paid or agreed to pay Hertz, not Hertz's subsidiaries. Compl. ¶¶ 42, 48, 59. There are no allegations or evidence showing that Hertz subsidiaries were ever mentioned, either online or in contracting documents, until after the contracts at issue were formed. Plaintiff

received two contracts from Hertz.  Id. ¶¶ 15-16, 23-24.  One expressly stated that all local fees would be billed in local currency, while the other identified the maximum total price and provided it in GBP, not dollars.  Id. ¶¶ 17, 24-25.  The only relief requested is from Hertz.  Id. at 11 ¶¶ 2-4.  Hertz now attempts to avoid liability by pointing to documents printed after Plaintiff had flown to foreign countries and tried to pick up the vehicles.  Equity should not reward such tactics.

      Hertz subsidiaries are unlikely to face prejudice as a result of this case.  If Hertz and its subsidiaries are found to operate as a single entity and Hertz was responsible for the currency conversion practice at issue, then a judgment entered against Hertz will not prejudice the subsidiaries at all.  At most, a judgment in this case may partially concern the actions of Hertz subsidiaries, including whether the subsidiaries engaged in misrepresentations, whether their current business practices are deceptive, and whether the subsidiaries breached their contracts.  But any effect will be practical, not legal, as it is unlikely that the subsidiaries would be subject to collateral estoppel or money damages as a result of this litigation.  Any prejudice here is therefore, at most, slight.

      Such prejudice can also be mitigated.  This lawsuit is focused on Hertz's own conduct and control over its subsidiaries, with the wrongfulness of the subsidiaries' actions being discussed only as it relates to a policy of Hertz.  This was presumably the intended course of this case given that Plaintiff sued only Hertz.  Additionally, Hertz and its subsidiaries share a community of interest that mitigates much of the prejudice.  Hertz's litigation policy documents indicate that it makes the final decisions on litigation matters involving its subsidiaries, anyway.  See, e.g., Dkt. No. 41, Ex. V at HERTZ00000641 ¶ 5.[2]  The same documents also require Hertz "normally to

---

[2] While this exhibit was not authenticated with a declaration, its authenticity went uncontested in Defendant's reply briefing.  The Court's ultimate finding—that Hertz subsidiaries are not indispensable—would be the same even without this document.

11

consult, in a full and timely fashion, with representatives of the Divisions and staff departments (and, where feasible, the Regions/Countries) affected by Pending Proceedings . . . ." Id. Hertz and its subsidiaries also both have strong interests in defending the Hertz brand and Hertz representations, so Hertz will be able to defend its subsidiaries' interests in the many circumstances where they align with Hertz's. Because prejudice here is mitigated by this case's focus on Hertz's conduct and the community of interest between Hertz and the Hertz subsidiaries, this factor weighs against a finding of indispensability.

As discussed above, supra at 5-6, adequate judgment can be rendered without the Hertz subsidiaries. This factor therefore also weighs against indispensability.

The most critical factor in the Court's estimation is whether the Plaintiff will have an adequate forum for his dispute if this case is dismissed. In all the cases cited by Hertz which dismissed a case for failure to join indispensable parties, the plaintiff had an adequate alternate forum. See Tullett Prebon, 427 F. App'x at 240 (plaintiff could proceed in arbitration and, failing that, in state court); Abuhouran v. Kaiserkane, Inc., No. 10-6609, 2012 WL 4027416, at *9 (D.N.J. Sept. 12, 2012) (plaintiff could proceed in state court); Develcom Funding, LLC v. Am. Atl. Co., No. 09-1839, 2009 WL 2923064, at *3 (D.N.J. Sept. 9, 2009) (same); Rosenzweig v. Brunswick Corp., No. 08-807, 2008 WL 3895485, at *9 (D.N.J. Aug. 20, 2008) (same); Fiscus v. Combus Fin. AG, No. 03-1328, 2007 WL 4164388, at *5 (D.N.J. Nov. 20, 2007) (discussion of whether Switzerland is an adequate forum, concluding that Switzerland is actually preferable for plaintiff); Glenny v. Am. Metal Climax, Inc., 494 F.2d 651, 654 (10th Cir. 1974) (plaintiff could proceed in state court); Rashid v. Kite, 957 F. Supp. 70, 74 (E.D. Pa. 1997) (same); Lang v. Colonial Pipeline Co., 266 F. Supp. 552, 554 (E.D. Pa. 1967) (same).

Here, by contrast, dismissal for failure to join Hertz's subsidiaries may prevent Plaintiff from suing Hertz anywhere. See Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 500 (7th Cir. 1980) (unavailability of alternative forum strongly counsels against a finding of indispensability). Though suits against Hertz subsidiaries could be brought in those subsidiaries' countries—Italy and the United Kingdom—there is no indication that Hertz itself would be subject to jurisdiction there. Hertz does not contract directly with the national subsidiaries, and no other contacts with Italy or the United Kingdom are present on this record. Clever incorporation and motion practice should not entirely free Hertz from accountability for its alleged breaches of contract and knowing misrepresentations, but dismissing this case for nonjoinder could lead to precisely that outcome. The claims in this case clearly concern Hertz's conduct. See, e.g., Compl. ¶¶ 14, 47. If the Court dismisses this case for nonjoinder, there is a substantial risk that Plaintiff would be left without a forum in which to pursue his claims against Hertz. That will not do.

Plaintiff would not have an adequate remedy if its case was dismissed, there is little or no prejudice, and any prejudice is mitigated by a clear community of interest between the named and absent parties. In equity and good conscience, the Hertz subsidiaries are not indispensable.

## IV.   CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings is **DENIED**. An appropriate order accompanies this Opinion.

Date: April 30, 2015　　　　　　　　　　　　　　　　　*/s/ Madeline Cox Arleo*
　　　　　　　　　　　　　　　　　　　　　　　　　　**Hon. Madeline Cox Arleo**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**