<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL MARGULIS,** *individually and on behalf of all others similarly situated,*<br><br>     **Plaintiff,**<br><br>v.<br><br>**THE HERTZ CORPORATION,**<br><br>     **Defendant.** | Civil Action No. 14-1209 (JMV)<br><br><br><br><u>**OPINION**</u> |

<u>**FALK, U.S.M.J.**</u>

  Before the Court is Plaintiff's motion for the issuance of letters rogatory compelling the deposition of four witnesses in the United Kingdom. [ECF No. 81.] The Court has considered the submissions in support of and in opposition to the motion. No oral argument was heard. Fed. R. Civ. P. 78(b). Based on the reasons that follow, Plaintiff's motion is **GRANTED**.

<u>**BACKGROUND**</u>

  Plaintiff, Daniel Margulis, commenced this action on February 25, 2014, alleging that Hertz is conducting a broad-ranging currency conversion scheme, which he labels "dynamic currency conversion" ("DCC"), to defraud its customers who rent vehicles abroad. Plaintiff alleges that Hertz quotes customer rates for vehicle rentals

without including any currency conversion fee, charges the fee directly to the customer's credit card, and then falsely claims the customer specifically chose the currency conversion and subsequent overcharge. Plaintiff claims that he was the victim of Hertz's DCC practices in connection with two car rentals—one in the United Kingdom and one in Italy. The operative Complaint contains claims based on this alleged scheme for (1) breach of contract; (2) unjust enrichment; (3) fraud; and (4) violations of the New Jersey Consumer Fraud Act.

On August 1, 2014, Hertz moved for judgment on the pleadings pursuant to Rule 12(c) and for failure to join indispensable parties pursuant to Rule 12(b)(7), claiming that two Hertz subsidiaries—Hertz U.K. Ltd. and Hertz Italiana S.r.l.—were necessary parties to the action because they were the entities that contracted with Plaintiff. Hertz also contends that these entities, not Hertz, provide DCC service in foreign countries.

On April 30, 2015, the Honorable Madeline C. Arleo, U.S.D.J., denied Hertz's Rule 12 motion.

Discovery technically closed on January 23, 2016. However, the parties have put a series of discovery disputes before the Court and an extension of the discovery period will be necessary. Included in those disputes is Plaintiff's current motion, filed on March 30, 2016, seeking to issue letters rogatory to compel the depositions of four non-party, Hertz-related individuals in the United Kingdom: Nick Horne; John Whitley; Nuns Moodliar; and Nicole Strathdee.

Plaintiff contends that these witnesses have crucial information relating to Hertz's currency conversion practices, and that Hertz has refused to voluntarily produce these witnesses, resulting in a need to proceed through the letters rogatory process.

Hertz counters that Plaintiff's proposed discovery is expensive, time consuming and irrelevant. Hertz claims that the currency conversion arrangement alleged in the Complaint is comprised of the procedures and practices of Hertz's foreign subsidiaries located in Europe, who are not defendants in the case. Hertz further claims that it does not have control over the witnesses at issue.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 28(b)(2)(A) provides that a deposition may be taken in a foreign country pursuant to a letter rogatory "on appropriate terms after an application and notice of it." Fed. R. Civ. P. 28(b)(2)(A). In effect, the party seeking to issue letters rogatory is asking the United States, through this Court, to request the United Kingdom's assistance in obtaining discovery:

> A letter rogatory is defined as the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times.

DBMS Consultants Limited v. Computer Associates, Int'l, 131 F.RD. 367, 369 (D. Mass. 1990) (internal quotes omitted).[1]

"On an application for the issuance of a letter rogatory seeking a deposition in a foreign country, the Court will not ordinarily weigh the evidence to be elicited by deposition and will not determine whether the witness will be able to give the anticipated testimony." Id. "[S]ome good reason must be shown by the opposing party for a court to deny an application for a letter rogatory." Jovanovic v. Northrop Grumman Corp., 2008 WL 4950064, at *1 (D.N.J. Nov. 18, 2008). Ultimately, the decision to issue letters rogatory is a discretionary one. Id.; see also Leasco Data Processing Equip. Co. v. Maxwell, 63 F.R.D. 94 (S.D.N.Y. 1973).

## ANALYSIS

Plaintiff claims that the letters rogatory process is necessary in this case because, during discovery, it has become apparent that "many witnesses" with "important information" about Hertz's currency conversation practices are located overseas.

Plaintiff initially attempted to gather information about Hertz's currency conversation program by deposing a witness Hertz offered on the subject—Mr. Robert Evans—but claims that Mr. Evans could not "answer the simplest of questions,

---

[1] The United States and the United Kingdom are signatories to the Hague Evidence Convention. The Hague Evidence Convention allows a court in one Contracting State to request another Contracting State to "obtain evidence, or to perform some other judicial act" by use of a Letter Request. See 23 U.S.T. 2555; see also 28 U.S.C. § 1781.

including how DCC works; how the DCC conversion is implemented; and how Hertz determines the exchange rate for DCC." (Pl.'s Br. 4.) Since Mr. Evans could not provide the information needed, Plaintiff requests leave to seek the depositions, through letters rogatory, of the following individuals:

- **Nick Horne**: Vice President of Counter Sales & Services, Hertz Europe. Plaintiff claims that Mr. Horne was identified during Mr. Evans's deposition as someone who would have knowledge of how DCC works, and that he is the "point person" for DCC.

- **John Whitley**: European Revenue Director, Hertz Europe. Plaintiff claims that Mr. Whitley succeeded Mr. Horne as the "point person" for DCC, and has important knowledge "about how the DCC calculation is made, including how the exchange rate is calculated . . . ."

- **Nuns Moodliar**: Vice-President, Legal & Corporate Affairs, Hertz Europe. Plaintiff claims that "emails demonstrate that Mr. Moodliar is closely involved with the DCC program and keeps track of DCC transactions and revenues."

- **Nicole Strathdee**: Area Operations Manager, Heathrow & Luton. Plaintiff claims that Ms. Strathdee is familiar with, *inter alia*, Hertz's DCC training and how DCC is disclosed to customers.

(Pl.'s Br. 5.)

Plaintiff claims that the witnesses identified above all will provide relevant

evidence by showing how the DCC program works and how its allegedly misleading, not disclosed to the consumer, and unauthorized—all in violation of industry standards and credit card rules. Moreover, given Mr. Evans's incomplete testimony, Plaintiff claims that the witnesses will provide information that will show that Hertz's DCC practices have a "U.S. nexus," which will rebut Hertz's allegation that everything in the case occurred in Europe through non-party European subsidiaries.

Hertz's opposition is really not about the discovery being sought but its general view about the case as a whole. Specifically, Defendant's argument section is comprised of a few pages that continue to assert it is essentially the wrong party in this case and seek to raise the issue on a summary judgment motion.

The Court agrees that Plaintiff has shown a basis to proceed with the issuance of the letters rogatory.

**First**, Plaintiff has sufficiently established that they are seeking relevant information. DCC is at the heart of the case. From what has been submitted, it seems as though Mr. Evans was unable to answer a number of questions that are important to how DCC works. Taking the next step to pursue the information from individuals in the United Kingdom, some of whom were discussed during Mr. Evans's deposition, is reasonable under the circumstances, relevant, and proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1).

**Second**, Hertz's opposition to Plaintiff's request is almost entirely merits

based.[2] Claiming that a case lacks merits is not a basis to oppose discovery, especially where, as here, Defendant's Rule 12 motion was unsuccessful. While the parties dispute the impact, Judge Arleo denied a motion to dismiss in which Hertz alleged the foreign subsidiaries were necessary parties to this case. Obviously Hertz believes that it should not be named in the Complaint and that it is not involved in DCC. But that is what discovery is for. The Court cannot simply accept the argument that the discovery produced to date exonerates Hertz and that summary judgment should proceed without allowing Plaintiff full discovery. Plaintiff has a different view and claims that the specific and targeted proposed depositions will further establish his claim. Having failed to have the case dismissed, discovery is the next step, and

---

2  A sample of Hertz's argument is:

"[A]ll of the discovery taken in this case demonstrates what [Hertz] has maintained all along: The Hertz Corporation is not involved in providing DCC to customers in the United States or elsewhere; DCC is a service provided in foreign countries by separately incorporated foreign subsidiaries of The Hertz Corporation";

"[A]ll of the events material to Plaintiff's claims . . . transpired at the rental counters of The Hertz Corporations subsidiaries located in Italy and Wales."

"[P]laintiff's search has not revealed any evidence that The Hertz Corporation has any direct involvement in, or bears any responsibility for, the wrongdoing alleged in Plaintiff's complaint."

"[A] good reason not to issue the sought-after Letters of Request is that it would be more reasonable and efficient for the Hertz Corporation to file a motion for summary judgment . . . ."

(Def.'s Opp'n 7-9.)

Plaintiff's request for discovery is reasonable and focused on the issues in the case. Perhaps Hertz will ultimately be correct about which entity is responsible for DCC. But that is a determination that cannot be made until after discovery is complete.

**Third**, the standard for the issuance of letters rogatory is relatively lenient and discretionary, and the Court is satisfied that serving the letters will not unduly delay the case, as there remains other discovery to complete before the case is ready for motion practice and trial.

## CONCLUSION

Based on the above, Plaintiff's motion for the issuance of letters rogatory [ECF No. 81] is **GRANTED**.  An appropriate order will be entered.


        s/Mark Falk
        **MARK FALK**
        **United States Magistrate Judge**


**DATED: July 25, 2016**