**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DANIEL MARGULIS,** *individually and on behalf of all others similarly situated,* <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE HERTZ CORPORATION,** <br><br> **Defendant.** | **Civil Action No. 14-1209 (JMV)** <br><br><br><br> **OPINION** |

**FALK, U.S.M.J.**

This is a putative class action involving The Hertz Corporation's currency conversion practices associated with car rentals in foreign countries. Before the Court is a long-running dispute in which Plaintiff seeks the production of emails Defendant has withheld as privileged. More than 15 letters have been submitted on this issue. Although the case has only one Defendant—United States-based The Hertz Corporation—the privilege issues in this case involve complex questions of corporate relationships, the use of the attorney-client privilege in the corporate context, and the subtle questions that can arise when a single in-house legal department purports to represent multiple, legally-distinct corporate entities, both foreign and domestic.

A summary of the dispute.  Defendant has withheld a number of emails pursuant to the attorney-client privilege and the common-interest doctrine.  However, the emails are almost exclusively between and among, not Defendant's employees, but employees of two of Defendant's foreign subsidiaries—Hertz U.K. Ltd. and Hertz Italiana S.r.l.—which are separate corporate entities and not parties to the case.  Despite this, Defendant claims that withheld documents are protected by its own attorney-client privilege due to the structure of Hertz's in-house legal department and in-house counsel's alleged "joint" representation of all three companies.  Documents withheld on this basis are referred to as "Category 1."

There is also a Category 2.  Specifically, some withheld documents were also shared by employees of the foreign Hertz companies with employees of a non-party, non-Hertz entity, Monex Financial Services, Ltd.  Monex is an Irish company that provides currency conversion services for Hertz rentals.  Defendant contends sharing documents with Monex is permissible, and does not waive the attorney-client privilege, because the disclosures occurred pursuant to New Jersey's version of the common-interest doctrine.

Plaintiff has challenged Defendant's claims of privilege, arguing that the attorney-client privilege does not stretch to cover the situation presented, that corporate form must be respected, and that the common-interest doctrine does not apply.

The questions presented are: (1) are the documents withheld protected by the attorney-client privilege at all?; and (2) if the documents are privileged, was sharing some of them with third-party Monex permissible pursuant to the common-interest doctrine or has the privilege been waived?

To answer these questions, the Court required an *in camera* submission of sample documents for both categories.  After much difficulty (explained more below), forty (40) sample Category 1 documents and eleven (11) Category 2 documents were submitted for *in camera* review.

For the reasons set forth below, Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

### A.   Introduction

Plaintiff, Daniel Margulis, a New Jersey citizen, commenced this putative class action on February 25, 2014, alleging that Hertz is conducting a broad-ranging currency conversion scheme, labeled "dynamic currency conversion" ("DCC"), to defraud its customers who rent vehicles abroad.  Plaintiff alleges that Hertz quotes customer rates for vehicle rentals without including any currency conversion fee, charges the fee directly to the customer's credit card, and then falsely claims the customer specifically chose the currency conversion and subsequent overcharge. Plaintiff claims that he was the victim of Hertz's DCC practices in connection with two car rentals—one in the United Kingdom and one in Italy.  The operative

Complaint contains claims based on this alleged scheme for (1) breach of contract; (2) unjust enrichment; (3) fraud; and (4) violations of the New Jersey Consumer Fraud Act.

On August 1, 2014, Hertz moved for judgment on the pleadings pursuant to Rule 12(c) and for failure to join indispensable parties pursuant to Rule 12(b)(7), claiming that Hertz U.K. Ltd. and Hertz Italiana S.r.l. were necessary parties to the action because they were the entities that contracted with Plaintiff. Defendant also contends that the subsidiaries, not Hertz, provide DCC service in foreign countries.

On April 30, 2015, the Honorable Madeline C. Arleo, U.S.D.J., denied Hertz's Rule 12 motion. No effort was made to add the alleged indispensible parties to the case.

### B. Plaintiff's Request to Compel

Discovery is ongoing and contentious. Two prior Opinions detail the parties overall discovery problems. *See Margulis v. The Hertz Corp.*, 2016 WL 6434183 (D.N.J. Oct. 28, 2016); *Margulis v. The Hertz Corp.*, 2016 WL 4009819 (D.N.J. July 25, 2016). The current privilege dispute has its own chapter; only select sections are recounted here.

On May 13, 2016, Plaintiff wrote to the Court about "several" outstanding discovery issues. Included in that letter (among other issues) was: (1) Plaintiff's objection to Defendant's attempt to withhold documents on grounds of what was then being referred to as the "common-interest privilege"; and (2) a request for *in camera*

review "of approximately 30 documents" that Defendant was claiming are protected by the attorney-client privilege, an assertion Plaintiff disagreed with.

On May 20, 2016, Defendant responded, claiming that it is essentially the wrong party in the case (something already rejected by Judge Arleo) and proposing a summary judgment and briefing schedule on that and choice of law issues. With respect to the privilege disputes raised in Plaintiff's letter, it claimed that Hertz "properly asserts the common interest privilege," and opposed any *in camera* review of any documents.

On July 14, 2016, the Undersigned held a conference to attempt to narrow or resolve the dispute as required by the Court's Local Civil Rules. *See* L. Civ. R. 37.1. The Court gave informal guidance to attempt to narrow the disputes, but directed that, if privilege disputes remain, documents should be submitted for *in camera* review.

On September 28, 2016, Defendant submitted for *in camera* review a binder that contained: (a) 40 sample documents withheld on attorney-client privilege grounds; (b) a number of sample documents allegedly withheld as privileged pursuant to the common interest "privilege"; and (c) two separate privilege logs.

On October 28, 2016, the Undersigned issued an Opinion and Order which stated that there is no such thing as the common-interest "privilege," and that any documents withheld on that basis alone should be produced immediately. *See Margulis v. The Hertz Corp.*, 2016 WL 6434183 (D.N.J. Oct. 28, 2016). As stated, the common-interest *doctrine* is a waiver-related concept; it is not a free-standing

5

privilege.  The doctrine allows a party to share with another party an *already privileged* communication, without waiving the privilege, if the two have a "common interest."  *Id.*  Plaintiff was directed to re-evaluate the documents that it was withholding and determine how it wished to proceed.

On November 11, 2016, Defendant submitted a new binder of documents and a new privilege logs.  This binder contained 11 sample documents and a new privilege log, purporting to show both an underlying privilege and the common interest for the Category 2 documents.  Nothing new was submitted with respect to Category 1.

On November 17, 2016, the Undersigned held an in-person conference.  In informal discussions with both parties, the Court expressed concern over the application of the common interest doctrine in this case, the shifting record, and how best to proceed in deciding a somewhat unwieldy privilege dispute.  It was agreed that the Undersigned would pose written questions relating to the privilege dispute to which both parties would have an opportunity to respond.

On December 14, 2016, I posed a series of written questions to Defendant relating to its privilege claims, including: how can Defendant be claiming attorney-client privilege with respect to various documents that do not involve an attorney, client, or anyone even employed by the named defendant in the case?  Also, after an initial review of some of the emails, the Court realized that *102* individuals are involved in the emails withheld, either as authors or recipients.  Out of 102 individuals, only *5* are employed by the actual Defendant in this case.  And out of the

5, only 2 are attorneys.  The problem was the papers submitted (including the logs) did not explain who these individuals are or how they were involved in privileged communications.  Accordingly, I also directed Defendant to provide a chart, listing the 102 individuals involved in the documents; who they are employed by; and their general job responsibilities.  This was appropriate and necessary since it is Defendant's burden (as the asserter of the privilege) to establish all of the elements of privilege.

On January 17, 2017, Defendant responded to the Court's questions. Chief among its responses was a discussion of the structure of Hertz's legal department.  For the first time, Plaintiff contended that a group of in-house attorneys, none employed by the Defendant but rather employed by the foreign Hertz entities, were joint attorneys for "joint" clients, which were all of the Hertz companies. Defendant also posited that the communications of these non-Defendant, non-attorney employees were privileged for a variety of reasons, including that they were "necessary intermediaries and agents through which attorney communications were made," or were providing or "needed to know" legal advice.  (Def.'s Jan. 17, 2017 Ltr. at 11.)

### C.   <u>Current Briefing</u>

Unfortunately, the Court's attempts to simplify the dispute have created a confusing record: the Court has two binders, three sets of documents, three privilege

logs; and 15 letters.[1]   What remains pending are: (1) the 40 Category 1 documents

submitted on September 28, 2016; and (2) the 11 common-interest doctrine documents

submitted on November 11, 2016.  In addition, the privilege log that applies to the

Category 1 documents is that dated "April 15, 2016" and submitted with Plaintiff's

binder on September 28, 2016.  However, the privilege log that applies to the

Category 2 documents is the revised privilege log submitted to the Court on

November 17, 2016, during the case management conference.

Even more confusing is the nature of the privilege logs.  For example, the first

document on the Category 1 log (Tab 29) is described as follows:

| Row | Control Number | Date Sent | From (Email) | To (Email) | CC (Email) | BCC | Description | Privilege grounds |
|-----|----------------|-----------|--------------|------------|------------|-----|-------------|-------------------|
| 29 | CNTRL 00064533 | 2/13/14 | nhorne@hertz.com | Cristoph Mueller | Gianluca Colmaedici; John Finch; Nuns Moodliar; Stefania Versari; Richard H. Davies | | Email regarding CYC policies and procedures, providing information requested by counsel to provide legal advice in CPCC class action. | Attorney Client |

---

1 The referenced letters are ECF Nos. 91, 92, 93, 94, 95, 97, 103, 104, 105, 106, 108, 113, 116, 117, and 119.

Despite the description, the document appearing at Tab 29 is not simply an email from "nhorne" to "Cristoph Muller" dated February 13, 2014.  Rather, it is an email chain of 6 different emails, with different authors and recipients, sent on different dates, discussing different matters.  More confusing, all 6 emails (the one actually listed on the log and 5 more) are all stamped with the same "Control Number," rather than individual Bates numbers.  The other five emails are not referenced anywhere on the privilege log.  This scenario exists for every single one of the documents listed on the privilege log—thus, for each entry on the log, which lists one date and one author and ostensibly one withheld document, there are actually multiple (at times 10 or more) emails, never listed on the privilege log.

Having multiple embedded emails that are not listed anywhere on the privilege logs is problematic.  It is unfair to an adversary who is inherently challenged in making arguments in a privilege dispute and must rely on what is on the log to do so.

Defendant has essentially asked the Court to accept that all email participants were necessary intermediaries helping attorneys render legal advice; agents of an attorney; or somehow otherwise in a position to "need to know" the legal advice allegedly involved.  This is not an effective way to argue privilege disputes, which must be assessed document-by-document and case-by-case.  *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("[C]laims of attorney-client privilege must be asserted document by document, rather than as a single blanket assertion.").

9

The Court has struggled with how to proceed in light of the above.  Under the circumstances, it would be reasonable to deny all claims of privilege by finding that the party asserting the privilege has not met its burden of establishing all of the elements.  *See, e.g.*, *Schaeffer v. Tracey*, 2017 WL 465913 (D.N.J. Feb. 2, 2017) ("The production of an inadequate privilege log . . . may be viewed as a waiver of the privilege.'" (citing Advisory Committee Notes to Fed. R. Civ. P. 26(b)(5) (2013 Amendments))); *Wachtel v. Health Net*, *Inc.*, 239 F.R.D. 81, 107 (D.N.J. 2006); *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179, 183-85 (E.D. Cal. 1991).  However, given how important the privilege is, and how much time has already been spent on the issue, the Court is not convinced that such an approach would be in the interests of justice.  Rather, the Court will analyze the issues and some of the documents, to the extent possible, to provide guidance to the parties.  This is a variant of the "sampling" approach used in large privilege disputes.  *See, e.g.*, *E.I. du Pont de Numours & Co. v. MacDermid, Inc.*, 2009 WL 3048421, at *1 (D.N.J. Sept. 17, 2009); *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 181 & n.1 (D.N.J. 2004).  Specifically, the Court will, for the most part, address the single document listed on the privilege log.  The parties are directed to meet-and-confer in-person and attempt to resolve their disputes using the principles discussed herein.  Any remaining disputes will be addressed by the Court, or if appropriate, a Special Master.

## II.    GENERAL LEGAL STANDARDS

### A.    <u>Attorney-Client Privilege</u>[2]

The attorney-client privilege exists to promote full and frank discussions between attorneys and their clients.  *Upjohn v. United States*, 449 U.S. 383, 389 (1981).  In New Jersey, the privilege is codified and protects: "communications" made "in confidence," between a "lawyer and client" in the course of a "professional relationship."  N.J.S.A. 2A:84A-20; N.J.R.E. 504; *see In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. 308, 313 (App. Div. 1992) (elements of the privilege).  A communication made in the course of relationship between lawyer and client "shall be *presumed* to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege."  N.J.R.E. 504(3) (emphasis added).  Despite the presumption of confidentiality, "the essence of the privilege" is limited to communications intended to be confidential.  *State v. Schubert,* 235 N.J. Super. 212, 220-21 (App. Div. 1989), *certif. denied,* 121 N.J. 597 (1990).  The party asserting the privilege bears the burden

---

2 This case is in federal court based on the Class Action Fairness Act, which is an extension of federal diversity jurisdiction.  *See, e.g.*, *In re Burlington N. Santa Fey Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) ("CAFA is, at base, an extension of diversity jurisdiction.").  When federal jurisdiction is based on diversity, courts are to decide issues of privilege based on state law.  *See, e.g., In re Ford Motor Co.*, 110 F.3d 954, 965-66 (3d Cir. 1997).  Therefore, New Jersey privilege law applies in this case.  *See id*.; *see also Gallo v. PHH Mortgage*, 2015 WL 12851917 (D.N.J. June 4, 2015) (CAFA is diversity jurisdiction and state law applies to questions of privilege); Martin *v. Lafon Nursing Facility of Holy Family*, *Inc,* 244 F.R.D. 352, 355-56 (E.D. La. 2007) (same).

to prove that it applies to any given communication. *Horon Holding Corp. v. McKenzie*, 341 N.J. Super. 117, 125 (App. Div. 2001).

Although the attorney-client privilege is narrowly construed because it "obstructs the truth-finding process," the privilege is not disfavored, and where applicable, "must be given as broad a scope as its rationale requires." *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561-62 (App. Div. 1984). Courts should be cautious in their application of the privilege mindful that "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Confidential communications relaying factual information in furtherance of an attorney's representation are privileged. *See id*. At the same time, underlying facts themselves are <u>never</u> privileged. *In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008)

In order to ensure that the privilege is not abused, the privilege does not apply simply because the communication was made to a person that is a licensed attorney. *Id*. Rather, the privilege applies only if the communication was made to an attorney *acting as an attorney*. *Id*. In the event the attorney was functioning in some other business or professional role, the privilege does not apply. *See, e.g., Robertson v. Central Jersey Bank & Trust Co.*, 834 F. Supp. 705, 708 (D.N.J. 1993); *Metalsalts Corp. v. Weiss,* 76 N.J. Super. 291, 299 (Ch. Div. 1962) (privilege denied where attorney acted as investigator); *Newark Bd. of Ed. v. Newark Teachers Union Local*

*481, AFT, AFL-CIO*, 152 N.J. Super. 51, 62-63 (App. Div. 1977) (privilege did not

protect notes prepared by an attorney serving as a negotiating representative in a labor

dispute); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98-99 (D.N.J. 1990) (privilege did

not protect the communications with in-house counsel relating to business rather than

legal matters).

Communications which relate to business rather than legal matters do not fall

within the protection of the privilege.  *Leonen*, 135 F.R.D. at 98.  Generally stated, the

rule is "while legal advice given to a client by an attorney is protected by the

privilege, business advice generally is not."  *In re Nat'l Smelting of New Jersey, Inc.*

*Bondholders' Litig.*, 1989 U.S. Dist. LEXIS 16962, at *18 (D.N.J. June 29, 1989)

(citation omitted).

While this rule seems simple, its application is much less so; the reason being,

"in the corporate community, legal advice 'is often intimately intertwined with and

difficult to distinguish from business advice.'" *Leonen*, 135 F.R.D. at 98-99 (quoting

*Sedco Int'l SA v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)).  The proper inquiry in

the business versus legal context "is focused on whether the communication is

designed to meet problems which can fairly be characterized as predominately legal."

*Leonen*, 135 F.R.D. at 99.   In order to meet this standard, the claimant should

demonstrate "that the communication would not have been made but for the client's

need for legal advice or services."  *Leonen*, 135 F.R.D. at 99 (quotations omitted).

In the context of emails, "emails in which in-house or outside attorneys are

13

merely sent copies of the text of the email, or in which they are merely one of many addresses, should not be privileged, unless the email is directed to the attorney or sent by the attorney .... To rule otherwise would allow parties to evade the privilege limitations by sending copies of every company-generated email to the company's attorney so as to protect the communication from discovery, regardless of whether legal services were sought or who the other recipients of the email were." *In re Avantel*, *S.A.*, 343 F.3d 311, 321 n.11 (5th Cir. 2003).  Finally, if an email is privileged but contains attachments, "each attachment must individually satisfy the criteria for establishing the privilege.  Merely attaching something to a privileged document will not, by itself, make the attachment privileged." *Leonen*, 135 F.R.D. at 98-99.

A voluntary relinquishment of a privileged communication by a holder of the privilege to someone not a party to the privilege generally waives its protection.  *In re State Com'n of Investigation Subpoena Number 5441*, 226 N.J. Super. 461, 466 (App. Div. 1998).  However, there is no waiver of the privilege if privileged communications are shared with "necessary intermediaries and agents." *Rivard v. American Home Prods. Inc.*, 391 N.J. Super. 129, 154 (App. Div. 2007).  Finally, "waiver of the privilege can occur only through the client, not counsel." *State v. Davis*, 116 N.J. 341, 362 (1989).

### B.    <u>Joint Client Representation</u>

The sole Defendant in this case is the New Jersey-based, The Hertz

Corporation.  However, as discussed, nearly all of the documents at issue involve communications between various employees of the Hertz foreign subsidiaries.  This raises the question of, in the context of the attorney-client privilege, who exactly is the attorney and who exactly is the client when considering privilege questions in the context of multiple-related companies with a centralized in-house legal department. The Third Circuit addressed this question in *In re Teleglobe*:

> [T]reating members of a corporate family as one client fails to respect the corporate form.  It is a bedrock principle of corporate law in Delaware and elsewhere that courts must respect entity separateness unless doing so would work an inordinate inequity.  By structuring its various activities by forming separate corporations, a parent company realizes numerous benefits, not the least of which are the liability shields.  With that structure comes the responsibility to treat the various corporations as separate entities.
> . . .
> . . . [I]n any event, absent some compelling reason to disregard entity separateness, <u>in the typical case courts should treat the various members of the corporate group as the separate corporations they are and not as one client</u>.

493 F.3d 345, 371-72 (3d Cir. 2007) (emphasis added).

If *Teleglobe* holds that all the members of a corporate family are not a *single* client for purposes of addressing privilege questions, that begs the follow-up question: how does the modern in-house counsel's office work?  Back to *Teleglobe* for the answer.  The Third Circuit recognized that "parent companies often centralize the provision of legal services to the entire corporate group in one in-house legal

15

department," and can be, and often are, "represented by the same in-house counsel." *Id*. at 372.   As a result, the Third Circuit concluded that, although not one client, the separate corporate members of a larger corporate family can be considered *joint* clients of the same in-house counsel for purposes of the privilege, regardless of which specific company employs the lawyer: "it makes sense . . . that the members of the corporate family are joint clients.   This reflects both the separateness of each entity and the reality that they are all represented by the same in-house counsel whether that counsel typically takes up office with the parent or a subsidiary," and any other result, "would wreak havoc on corporate counsel's office."  *Id*.

Of course, the particular facts and circumstances of the corporate structures and relationships must be such that there is an *actual* joint attorney-client relationship between the in-house counsel and the corporation that the attorney represents.  A joint representation—that is, that a given lawyer actually has as separate clients the individual members of a larger corporate family—will always be a fact specific inquiry.  Simply stating it does not make it so.

Here, Defendant has represented the following with respect to the Hertz legal department in this case:

> The Hertz Corporation's outside counsel had to coordinate with in-house counsel who were working on behalf of both The Hertz Corporation and its European subsidiaries.  The documents that The Hertz Corporation has withheld as privileged arise almost exclusively from the email files of employees of Hertz subsidiaries located in Europe.
> . . .

. . . [A]s relevant to this case, Hertz has one group of in-house counsel located in the United States, a second group of in-house counsel located in the United Kingdom, and individual attorneys located within certain other countries in Europe. The in-house counsel in the United States hold primary responsibility for representing The Hertz Corporation, as a general matter, and the in-house counsel located in Europe generally hold primary responsibility for representing European subsidiaries, but all Hertz in-house counsel, regardless of where they are located, may perform legal services on behalf of the other Hertz entities as required.

In this matter specifically, Hertz's US-based in-house counsel have delegated some of their responsibility for defending The Hertz Corporation in this matter to other of the European based in-house counsel.  As such, The Hertz Corporation is represented in this matter by in-house counsel Richard McEvily, Kevin McIver, Nuns Moodliar, John Finch, Gianluca Colamedici, and Nelly Bouilly.

(Def.'s January 17, 2017 letter at 2, 6.)

None of this represented in-house legal structure is presented in an affidavit.

And Plaintiff has challenged it as follows:

[T]his appears to be another in a long line of attempts by Hertz to use its corporate structure to its immediate advantage.  When it suits Hertz' purpose, its European subsidiaries have been completely independent from the US parent.  For example, in its motion to dismiss, it argued that it was not responsible for any rentals, such as those of Plaintiffs, that were actually serviced by its European subsidiaries.  With respect to witness employed by Hertz UK that the Plaintiff wished to depose, it was Hertz' position that it had not control over those witnesses, so Plaintiff had to seek letters of request from this Court.  Now that it suits its purpose to keep from producing potentially damaging documents, Hertz' European subsidiaries are part of one large corporate family under common control.  Hertz' corporate structure cannot be that pliable, as the Court appeared to note by some of its questions.

(Pl.'s Letter dated January 17, at 1-2.)

Plaintiff's position is understandable though not dispositive.  There seemingly has been a somewhat shifting approach to corporate structure at times in this litigation.  However, with that said, the Court will accept the representations of Defendant's counsel on this subject.  If further issues arise as a result of this Opinion, the Court may consider further investigation into the issue, including the taking of sworn testimony.  At this time, however, the Court will proceed to analyze the submitted documents assuming the lawyers identified above represent all of the Hertz companies.

## C.  **Intra-Corporate Communications**

Traditional notions of attorney-client privilege require a communication between an attorney and a client.  Here, many documents that Defendant has withheld involve communications between and among non-lawyer employees of the various Hertz entities.  No binding case law has been cited, but the general view is that "sharing documents amongst corporate employees does not necessarily vitiate a privilege; [rather,] communications remain privileged if they assist the attorney to formulate and render legal advice."  *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016).  It is clear that there is no privilege if the communication includes lower-level employees that are not vital to the provision of legal advice.  *See TransWeb, LLC v. 3M Innovative Props. Co.*, 2012 WL 2878076, at *14 (D.N.J. July 13, 2012).  Similarly, "general group-wide descriptions such as

18

'management' do not allow for the Court to assess whether the recipients require, or have the capacity to act upon, the information requested." *Id*.

However, the privilege does apply when a communication is "by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the corporation." *See id*. In sum, the privilege protects communications with those that must be consulted in order for a lawyer to provide legal advice—i.e., those that "need to know" or have information necessary to assist the lawyer in providing legal advice. *Id.*; *see also Rawlings v. Police Dep't of Jersey City*, 133 N.J. 182, 196 (1993).[3]

---

3 Defendant's various letters mention the similar, but different concept of disclosure to an "attorney's agent," *see, e.g.*, *Tractenberg v. Twp. of West Orange*, 416 N.J. Super. 354, 376 (App. Div. 2010), as a basis to withhold documents. (*See* Def.'s Letter dated Jan. 17, 2017, at 12.) The Court does not see an "agent" theory of the attorney-client privilege present in this case. Here, the documents at issue are emails between and among *employees* of the various Hertz companies referenced above. The application of privilege to such communications would be more appropriately described as "intra-" or "inter-" corporate communications between employees and analyzed under that standard. *See In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *5-6. In contrast, an "agent" is most commonly a non-lawyer third-party that assists a lawyer in providing legal services, such as an investigator, paralegal, or accountant. *See, e.g.*, *La. Mun. Pol. Emplys. Ret. Sys. v. Sealed Air*, 253 F.R.D. 300, 311-14 (D.N.J. 2008); *see also* Paul Rice, Attorney-Client Privilege in the United States, § 3:3 ("The concept of the attorney-client privilege extending to third-party agents has been developed through case law and has included investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of other social and physical sciences."). Except for very minor exceptions identified herein, the agent theory of the attorney-client privilege is largely inapplicable to this dispute. *See, e.g.*, *In re Riddell*, 2016 WL 7108455, at *5-6 (identifying difference between inter-corporate communications and third-party agents).

### D.  **Common-Interest Doctrine**

Defendant initially argued that the common-interest doctrine was a "privilege" that protected many of the withheld documents from disclosure.  However, the common-interest rule is a *waiver*-related doctrine; it is an exception to the general rule that disclosure of an privileged communication results in waiver of the privilege:

> All agree, however, that the common interest rule does not create a new privilege.  Rather, it permits disclosure of privileged material, attorney-client confidential communications or work product, to third parties without waiving any privilege as long as the applicable features of the common interest rule in the jurisdiction are satisfied.

*O'Boyle*, 218 N.J. at 168

Documents may be withheld on attorney-client privilege or work-product grounds.  The common-interest rule allows the withholding party to *share* that privileged communication with others that are within a community of interest without waiving the underlying privilege.  In order to avoid waiver of privilege protection when sharing protected communications, the disclosure of privileged information must be (1) made due to actual or anticipated litigation, (2) for the purpose of furthering a common interest, and (3) made in a manner not inconsistent with maintaining confidentiality against adverse parties.  *Id.* at 199 (citing *LaPorta v. Gloucester County*, 340 N.J. Super. 254, 262 (App. Div. 2001)).  Therefore, the first question is always whether an underlying communication is privileged to begin with, whether it be attorney-client, work-product, or otherwise.

*See O'Boyle*, 218 N.J. at 198.  If that is established, the Court may then consider whether the privileged document was shared with someone and whether such sharing was permissible.

Certain aspects of the common interest doctrine are subject to wide-ranging interpretations across the Country.[4]  However, this Court is bound to apply New Jersey privilege law in this case, and New Jersey law favors an extremely expansive view of the doctrine.  Indeed, *O'Boyle* has made clear that disclosure may occur prior to the commencement of litigation; may involve communications between counsel for one party and a representative of another party; that the shared interest need not be strictly legal but also may be commercial; and that the parties' shared interests need not be identical -- a "common purpose" will suffice.  *Id.* at 199.[4]  The burden to show

---

4 For example, the degree of common legal interest required to qualify under the doctrine ranges from "substantially similar" to "identical." *Compare La. Mun. Police Empl. Ret. Sys. v. Sealed Air*, 253 F.R.D. 300, 309-10 (D.N.J. 2008) (substantially similar legal interests sufficient); *with Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974) (identical interests required).  Some courts also require that the parties' shared interests be strictly legal, or that there be an imminent threat of litigation.  *See O'Boyle*, 218 N.J. at 168 (discussing various distinctions).

4 One thing *O'Boyle* is *not* clear on *is* applicable to this case.  Specifically, *O'Boyle* holds that the common interest rule "applies to communications between attorneys and also communications between an attorney for one party and a representative for another; *not communications between two representative as a general matter*." *Gallo,* 2015 WL 12851917, at 5 (emphasis added).  Following *O'Boyle*, the *Gallo* court appears to be the only court to have addressed the question of whether employee-to-employee conversations not involving an attorney qualify for protection under the New Jersey common interest doctrine.  The *Gallo* court's conclusion is that such communications fall within *O'Boyle's* construct of the common-interest doctrine.  *See id.*  Given the conclusions reached later in this Opinion, it is not necessary to conclusively decide whether the Undersigned will follow *Gallo.*  However, it is worth

the privilege has not been waived, and thus, that the doctrine applies, rests with the party resisting disclosure.  *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 418, 423 (E.D. Pa. 2001).

## III.  <u>SAMPLE DOCUMENTS</u>

### A.  <u>Attorney-Client Documents; Category 1</u>

Against the backdrop of the legal standards identified above, the Court will evaluate a sample of the Category 1 documents.  *Note*: The *only* documents that have been reviewed in this section are the documents with the "date" and "to" and "from" listed on the privilege log, since that is all that Defendant has properly listed for review; the remainder of the email chains are not discussed further in the opinion and will have to be individually listed and addressed if Defendant contends they are privileged.

---

noting that, if federal law applied in this case, there is a strict attorney-sharing requirement, and any document that was shared between non-lawyer representatives of Hertz and Monex would *not* qualify and would be produced.  *See, e.g.*, *Hoffmann La-Roche v. Roxane Labs*, 2011 WL 1792791, at *5-6 (D.N.J. May 11, 2011) ("'the common-interest rule only supplants the disclosure rule *when attorneys, not clients, decide to share information in order to coordinate legal strategies.*'" (quoting *Teleglobe*, 493 F.3d at 365 (emphasis added))).

| Log Entry | Control Number | From/To; Description | Decision |
|---|---|---|---|
| 29 | CNTRL 00064533 | Email *from* Nick Horne (Hertz Europe Revenue Director International) *to* Christoph Mueller (Hertz Europe Operations Services Manager)<br><br>Copied to: Nuns Moodliar (Vice President, Corporate and Legal Affairs; Hertz Europe, Ltd.); Gianluca Colamedici (Hertz Italia, srl, Legal Counsel); John Finch (Hertz Europe Ltd, Senior Counsel); Stefania Versari (Hertz Italia; Operations Service Manager); Richard H. Davies (Hertz UK, Operations Director). | This document is privileged.<br><br>The opening of the email is addressed to Nuns Moodliar, even though the "to" is Christoph Muller.  The document amounts to Mr. Horne responding to Mr. Moodliar's request for information relating to the allegations in this case.  Moreover, the information requested by Mr. Moodliar of Mr. Horne was originally requested by Hertz's Senior Vice President and Deputy General Counsel Richard P. McEvily earlier in the email chain. |

| 30 | CNTRL 00064534 | Email *from* Gianluca Colmedici (Hertz Italia, S.r.l, Legal Counsel) *to* Nuns Moodliar (Vice President, Corporate and Legal Affairs; Hertz Europe, Ltd.). | This document is privileged. |
|----|----------------|---|---|
| | | Copied to Christoph Muller (Hertz Europe Operations Services Manager) and John Finch John Finch (Hertz Europe Ltd, Senior Counsel). | This is an email between counsel relating to the allegations in the case.  Although the lawyers are employed by different Hertz entities, the joint client relationship protects the communication. |
| | | | The carbon copies do not waive the privilege under these facts because the substance of the email and those earlier in the chain suggest that they were all involved in responding to a request for legal advice. |
| 39 | CNTRL 00064553 | None Provided | This document is not privileged. |
| | | | Defendant describes it as a document with "with comments to facilitate legal advice for CYC litigation."  However, there is nothing that suggests this document is privileged. There is no author or recipient identified. There is no attorney; no client. There is no further information about the origins of the document, its creation, or its disclosure and dissemination within Hertz. |

24

| 68 | CNTRL 00075727 | None Provided | Not privileged.  The document appears to be a duplicate of Log Entry 39 and is not privileged for the same reasons. |
|----|----------------|---------------|---------------------------------------------------------------------------------------------------------------------|
| 93 | CNTRL 00064643 | None Provided | Not privileged.  This document is a screenshot of an unidentified document, which refers to "France (Hertz Interactive Platform)."  The only name appearing on the document is "Brenda."<br><br>Defendant has not identified a lawyer or client involved in this communication, or even Brenda's last name. |
| 125 | CNTRL 00064694 | Email *from* Fabrice Quinquenel (Hertz France, President) *to* Stephanie Auberville (Hertz France Revenue Manager-France) and Christine Stoos (Hertz France Director of Quality).<br><br>Copied to: Martial Dore (Hertz France Operation Service Director); Nelly Bouilly (Hertz France Legal Director); Nuns Moodliar (Vice President Corporate and Legal Affairs) | This document is privileged.<br><br>The email is a message from the President of Hertz France to Hertz personnel, including the Hertz France Legal Director, forwarding a message from Nuns Moodliar about DCC and the allegations in the case.  The substance of the message includes the legal advice of Mr. Moodliar relating to DCC.  Moreover, the intent appears to be to treat the communication as privileged, as the subject line states: "CPCC/US Class Action/Confidential." |

| 126 | CNTRL 00064696 | Email *from* Martial Dore (Hertz France Operation Service Director) *to* Fabrice Quinquenel (Hertz France, President), Christine Stoos (Hertz France Director of Quality)<br><br>Copied to: Nelly Bouily (Hertz France Legal Director); Nuns Moodliar (Vice President Corporate and Legal Affairs); Stephanie Auberville (Hertz France Revenue Manager -France); Francois Deygas (Hertz France Operations Director); Olivier Robert (Hertz France Operations Director – South). | The document is not privileged.<br><br>The privilege log refers to this document as an email forwarding legal advice.  However, the actual document contains little to no substance.  Nor has Defendant established that it is to or from an attorney.  Nor are *any* of the recipients employees of the sole Defendant in this case.  Nor has Defendant established that all individuals copied are necessary intermediaries such that they fall within the small group in the company that "needs to know" of an attorney's legal advice. Defendant has not carried its burden to show that this document is privileged. |

| 130 | CNTRL 00064731 | Email *from* Fabrice Quinquenel (Hertz France, President) *to* Nuns Moodliar (Vice President Corporate and Legal Affairs); Henk Van-Den-Helder (Hertz Benelux, General Manager); Neil Cunningham (Hertz UK, General Manager); Francis Waddington (Hertz France Regional General Manager); Elyes Mrad (Hertz International, VP Sales & Marketing); Rafael Girona (Hertz Autoverm ietung GMBH, Managing Director); Massimilliano Archiapatti (Hertz Italiana srl, General Manager); Jiri Katolicky (Hertz Autopujc ovna s.r.o., General Manager). Copied to: Michael Taride (President, Hertz International); Toby McHenry (Hertz International, Division VP and Finance Business Partner EMA and APAC); Sonja Clarke (Hertz International, Vice President, France International); Mike Clarke (Hertz International, Vice President Human Resources). | This document is not privileged. Although the document is labeled "CPCC/US CLASS ACTION/Confidential," and although it is responding to Nuns Moodliar, an attorney, the email is written to 7 additional recipients and carbon copied to 4 more, for a total of 11 email recipients separate and apart from the attorney (Moodliar) and client (Quinquenel), neither of which, it should be noted, are employed by Defendant in this case. The document is not privileged because Defendant has not established that all of the individuals that are included on this email are necessary intermediaries or that they "need to know" the legal communication made. The attorney-client privilege is meant to be an intimate relationship. Sending an email to 11 people, not one of whom is employed by the Defendant in this case, suggests lack of privilege and/or waiver. |

| 146 | CNTRL 00097720 | Email *from* Nicole Strathdee (Hertz UK, Area Operations Manager Heathrow) *to* Neil Cunningham (Hertz UK, General Manager) | The document is privileged.<br><br>It is a communication between two intermediaries, who, by title, seem necessary to discuss and "need to know" the legal advice given by Nuns Moodliar earlier in the email chain.<br><br>The document also seems to have been treated as confidential as the subject states: "Confidential: RE: FW: CPCC/US CLASS ACTION/Confidential." |
| 147 | CNTRL 00097723 | Email *from* Nicole Strathdee ((Hertz UK, Area Operations Manager Heathrow) *to* Scott Dackonbe (Hertz UK, Airport Manager); Syed M. Basheer (Hertz UK, Airport Shift Manager); Adam Cuffy (Hertz UK, Airport Shift Manager); Lukas Theophilou (Hertz UK Ancillary Sales manager) | This email is not privileged.<br><br>It is a one sentence email that does not involve an attorney and is sent between non-party rental car managers in Europe, none of whom are parties in the case. Nor has Defendant shown that they are necessary parties to a privileged communication or need to know privileged discussions; this conclusion is reinforced, practically, by the description of one of the managers as "Ancillary" by title. |

| 257 | CNTRL 00097777 | Email *from* Nicole Strathdee ((Hertz UK, Area Operations Manager Heathrow) *to* Richard H. Davies (Hertz UK, Operations Director) | This document is not privileged.

It does not expressly refer to an attorney's legal advice, nor is it sent to or from an attorney.

Defendant has not otherwise explained how the document is privileged.

The privilege log entry also refers to attorney work-product, but work-product does not seem to apply in this context, nor has Defendant addressed the issue. |
| 645 | CNTRL 00067065 | Email *from* Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems) *to* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region).

Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); David Green (Hertz Europe Service Center, Senior Business Analyst). | The document is privileged.

The email is a response to a question originally posed by Nuns Moodliar (counsel) to Mr. Bendle, who advised that he needed to obtain the information from Ms. Clearambourg. Therefore, an attorney (Moodliar) requested of an intermediary (Bendle) information related to a legal issue, which then had to be requested of the person who had the necessary information (Clerambourg). |

| 675 | CNTRL 00073174 | Email *from* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region) *to* Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems)<br><br>Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); David Green (Hertz Europe Service Center, Senior Business Analyst); Christoph Mueller (Hertz Europe Operations Services Manager); David Whittle (Hertz Europe Service Centre, Talent Management Team); John Finch (Hertz Europe, Ltd., Senior Counsel); Lisa Weston (Employee of Intellinx LLC, A Xerox company, a Hertz contractor). | This document is not privileged.<br><br>First, the document includes as a carbon copy a Xerox employee, Ms. Weston. Ms. Weston is not an attorney or client in any way relating to Hertz, nor has Defendant established that she is an "agent" for purposes of expanding the attorney-client privilege.<br><br>Second, the document itself is a training document that is not "legal" but part of the Hertz "business." Thus, any attorney included in the email is acting in a business capacity, not in the capacity of an attorney providing legal advice. Thus, there is no privilege that applies.<br><br>Third, apart from Ms. Weston, there are numerous recipients of the email (direct and cc'd) that Defendant has not established are necessary intermediaries for Hertz's counsel to provide legal advice. Only those employees that "need to know" are permitted to be included in privileged communications and Defendant has failed to establish that each and every recipient involved "needed to know" attorney-client privileged communications. |

| 679 | CNTRL 00086025 | Email *from* Christoph Mueller (Hertz Europe Operations Services Manager) *to* Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems). | This document is not privileged.<br><br>The document does not include or reference an attorney or any legal advice.<br><br>It is a "business" rather than "legal" document, as no attorney or legal advice is involved. |
|-----|----------------|-----|-----|
| 680 | CNTRL 00086027 | Email *from* Christoph Mueller (Hertz Europe Operations Services Manager) *to* Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems). | This document is not privileged.<br><br>As with the last document, it does not include or reference an attorney or legal advice.<br><br>Moreover, the mere inclusion of Mr. Moodliar earlier in the email chain is irrelevant, as merely copying an attorney on an email is insufficient to establish the attorney-client privilege. |

| 681 | CNTRL 00073176 | Email *from* Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems) *to* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region)<br><br>Copied to: Christoph Mueller (Hertz Europe Operations Services Manager); Nuns Moodliar (Vice President Corporate and Legal Affairs); David Whittle (Hertz Europe Service Centre, Talent Management Team); John Finch (Hertz Europe, Ltd., Senior Counsel); David Green (Hertz Europe Service Center, Senior Business Analyst); Lisa Weston (Employee of Intellinx LLC, A Xerox company, a Hertz contractor). | This document is not privileged for the same reasons stated with respect to Log Entry 675 above. |

| 682 | CNTRL 00073177 | Email *from* Christoph Mueller (Hertz Europe Operations Services Manager) *to* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region) | This document is not privileged for the same reasons as Log Entries 675, 679, 680, and 681. |
| | | Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems); David Green (Hertz Europe Service Center, Senior Business Analyst); David Whittle (Hertz Europe Service Centre, Talent Management Team); John Finch (Hertz Europe, Ltd., Senior Counsel); Lisa Weston (Employee of Intellinx LLC, A Xerox company, a Hertz contractor). | |

| 683 | CNTRL 00073178 | Email *from* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region) *to* Christoph Mueller (Hertz Europe Operations Services Manager).<br><br>Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems); David Green (Hertz Europe Service Center, Senior Business Analyst); David Whittle (Hertz Europe Service Centre, Talent Management Team); John Finch (Hertz Europe, Ltd., Senior Counsel); Lisa Weston (Employee of Intellinx LLC, A Xerox company, a Hertz contractor). | This document is not privileged for the same reasons as Log Entries 675, 679, 680-82. |

| 684 | CNTRL 00073179 | Email *from* Alex Bendle (Hertz Europe, Learning Solutions Specialist/Manager, Learning & Development International Region) *to* Nuns Moodliar (Vice President Corporate and Legal Affairs)<br><br>Copied to: Sandrine Clerambourg (The Hertz Corporation, Project Lead Counter Systems); Christoph Mueller (Hertz Europe Operations Services Manager); David Green (Hertz Europe Service Center, Senior Business Analyst); David Whittle (Hertz Europe Service Centre, Talent Management Team); John Finch (Hertz Europe, Ltd., Senior Counsel); Lisa Weston (Employee of Intellinx LLC, A Xerox company, a Hertz contractor). | This document is not privileged.<br><br>Although the email is written to counsel asking him to approve something, it is not an attorney-client privileged communication for a couple of reasons.<br><br>First, the request seems more business in nature as opposed to legal.<br><br>Second, there are multiple parties to the conversation that remove it from any privileged protection that might otherwise exist. Defendant has not established that any of the copied recipients are necessary to the privileged communication. This especially applies to Ms. Weston, an employee of *XEROX*, a copy company. A critical element of the attorney-client privilege is the concept of confidentiality; an intention to keep the communication closely-held. Parties cannot have an expectation of confidentiality—at least not to the level that the communication could be privileged—when a non-Hertz employee is involved in the communication, and there is no treatment of the document as confidential. |

| 710 | CNTRL 00021528 | Email *from* Robert Evans (Hertz Europe, Ltd., Director Global Payment Solutions) *to* Grace Winters (Hertz Europe Service Centre, Director – Order to Cash)<br><br>Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); Christoph Mueller (Hertz Europe Operations Services Manager); Alex Job (Director of Financial Shared Services & Reporting). | This document is not privileged.<br><br>The document involves CYC revenue in a year-to-year comparison.<br><br>While an attorney—Mr. Moodliar—is copied on the document, it could only be for "business" and not legal purposes.  Indeed, the Subject of the email is "DCC – Revenue Decrease." |
|---|---|---|---|
| 714 | CNTRL 00027332 | Email *from* Christoph Mueller (Hertz Europe Operations Services Manager) *to* Robert Evans (Hertz Europe, Ltd., Director Global Payment Solutions); Grace Winters (Hertz Europe Service Centre, Director – Order to Cash)<br><br>Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); Christoph Mueller (Hertz Europe Operations Services Manager); Alex Job (Director of Financial Shared Services & Reporting). | This document is not privileged.<br><br>It involves the revenue associated with CYC.  It is a business document.<br><br>Again, while Mr. Moodliar is copied on the email, he is neither the author nor recipient and no legal advice is given, asked for, or received in the communication.  Nor does the communication reflect any legal advice that was given. |

| 719 | CNTRL 00067838 | Email *from* Robert Evans (Hertz Europe, Ltd., Director Global Payment Solutions) *to* Grace Winters (Hertz Europe Service Centre, Director – Order to Cash)<br><br>Copied to: Nuns Moodliar (Vice President Corporate and Legal Affairs); Christoph Mueller (Hertz Europe Operations Services Manager); Alex Job (Director of Financial Shared Services & Reporting). | This document is not privileged for the same reasons stated with respect to Log Entries 710 and 714. |
| --- | --- | --- | --- |
| 886 | CNTRL 00089054 | Email *from* Christoph Mueller (Hertz Europe Operations Services Manager) *to* Manuela Vermeulen (Hertz Automobielen Nederland, Management Assistant). | This document is not privileged.<br><br>Defendant refers to the document as an "email requesting legal review of training documents."<br><br>The actual email does not reflect the description.  Moreover, Defendant has failed to carry its burden to explain who the recipient to the email is and how the recipient would be involved in providing legal advice or facilitating the provision of legal advice. |

| 956 | CNTRL 00014785 | Email *from* Robert Evans (Hertz Europe, Ltd., Director Global Payment Solutions) *to* Brian P. Slovak (SR IT specialist; IBM Global)<br><br>Copied to: Brent J. Lay (Hertz Corporation, Director, IT Business Partner); Brent Lessing (Hertz Corporation, Vice President Improvement Processes & Program Management). | This document is privileged.<br><br>The subject of the document states: "Margulis v. Hertz . . . ."<br><br>This appears to be a communication by a necessary intermediary seeking information relating to the Hertz litigation. While a non-Hertz employee is involved (Mr. Slovak) he is acting as an agent in this context in the sense that he is acquiring and providing information to a Hertz employee to relay back to Hertz counsel on a legal issue in the case. Mr. Slovak's involvement is different from that of Ms. Weston's (*see, e.g.*, Log Entry 684), because it appears that Mr. Slovak is capable of, and is, providing information to counsel that could not be provided by any other individual, rending him a necessary intermediary. |

## B.   <u>Common-Interest Doctrine; Category 2</u>

Hertz, or more specifically the employees of its foreign subsidiaries, shared communications with employees of Monex. In Defendant's view, this sharing was permissible because Monex and Hertz share a "common-interest" in defending the litigation.

At the outset, the same problems that exist with respect to Defendant's privilege log on the Category 1 documents exist equally with respect to Category 2.

38

And for the same reasons, analysis of individual documents is nearly impossible. We do not conclusively reach the question of common-interest until an underlying privilege is established. And, for multiple entries on the Log submitted, the single document listed is almost assuredly *not* privileged (*see, e.g.*, Category 2 Log; Entries 673, 992).

Nevertheless, both sides have argued, in letters in general terms, whether a common-interest could ever exist between Monex and Hertz or whether the sharing of documents with Monex destroys any applicable privilege. (*See* Pl.'s May 13, 2016 letter at 1; Def.'s August 4, 2016 Ltr. at 1-7.)

It seems as if the parties real dispute is over the first factor of the common-interest question: whether sharing occurred due to actual or anticipated litigation. *O'Boyle*, 218 N.J. at 199. In this Court's view, it is possible that Monex and Hertz had a reasonable anticipation of litigation. At the time of the communications, it appears Hertz was already aware that it may be sued by Plaintiff for conduct associated with DCC. Monex is the vendor that provides DCC services offered by the Hertz subsidiaries. DCC is at the center of the case; it is the main issue in dispute. As Defendant explains, Monex sets the exchange rate for DCC, trains Hertz' employees and earns revenue on each DCC transaction. Since DCC is at the heart of the case, it is possible that Hertz and Monex could have believed that they could have been part of this litigation. *See, e.g.*, *B.E. Myers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 734 (Ct. Cl. 1998) (common interest present when party supplied infringing product);

39

*Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, 617 Fed. Appx. 227, 243 (4th Cir. 2015).

At the same time, further sharing with Monex on a going forward basis would likely *not* be protected, as it is no longer reasonable for Monex to believe it will be added to the suit, as Plaintiff has not sought to do so for three years.  However, at the time the sharing occurred, and based upon the services Monex provides to Hertz, which are the subject of the case, a reasonable belief of potential or anticipated litigation could exist.

The second factor is the purpose of the sharing.  *O'Boyle*, 218 N.J. at 199. Defendant represents that the purpose of the sharing was to obtain additional information relating to DCC to assist Hertz' counsel in defense of the litigation.  This would seem to satisfy the second prong of the common-interest test, at least under the far-reaching New Jersey formulation of the doctrine.

The third factor is whether the sharing was made in a manner not inconsistent with maintaining the privilege and confidentiality against adverse parties.  *Id*.  The answers to those questions are document specific.  From what the Court has seen from reviewing the limited entries on the log submitted, that is not necessarily the case, although at times it could be.  Some log entries refer to emails with the subject listed as "Hertz Legal Case – Extremely Urgent" (*see* Category 2 Log; 403).  However, other documents make no reference to the case, and it is unclear how the recipient viewed the document and its confidentiality (*see, e.g.*, Category 2 Log; 673.)

Based on the above, the Court finds that the first and second factors of the common-interest question are satisfied in this case.  Whether the third and final factor

is satisfied, and thus whether sharing was permissible, would depend on the

particulars of the specific documents, which have not been properly presented.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**.  As stated previously, the parties are ordered to meet-and-confer in-person to resolve disputes with the remaining documents, considering the statements in this Opinion.


**s/Mark Falk** _____
**MARK FALK**
**United States Magistrate Judge**



**DATED: February 28, 2017**

41